Doug Wolf, Esq.
888 16th Street, NW, Suite 800
Washington, DC 20006
(202) 650-5505
E-Mail:        dougwolf@altostreetenvironmental.com

Erik B. Ryberg (AZ Bar No. 023809)
Post Office Box 2013
Tucson, AZ 85702
Telephone:    (520) 784-8665
E-Mail:       ryberg@seanet.com
Association *Pro Hac Vice* Pending

Attorneys for Plaintiff KEN OLSEN

UNITED STATES DISTRICT COURT
DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| KEN OLSEN, | ) | |
| | ) | Civ. No. |
| Plaintiff | ) | |
| | ) | **COMPLAINT** |
| v. | ) | |
| | ) | |
| | ) | |
| | ) | |
| U.S. DEPARTMENT OF VETERAN'S | ) | |
| AFFAIRS | ) | |
| | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

**INTRODUCTION**

1.      This is an action under the Freedom of Information Act ("FOIA"),

5 U.S.C. § 552 *et seq.*,  to compel the Defendant U.S. DEPARTMENT OF

VETERAN'S AFFAIRS ("VA") to locate and release non-exempt agency records to

the Plaintiff, KEN OLSEN.

2.      Mr. Olsen is a journalist who frequently writes on veteran's issues for

*The American Legion Magazine,* which is the official publication of The American

Legion, a veteran's organization.  Mr. Olsen's articles appeared, for example, in the

January, April, May, July, September, October, and December issues of that

magazine in the year 2014.  (Mr. Olsen also writes for other publications, and seeks

information on the VA not only for *The American Legion Magazine* but as

background for his general work in this area.)

3.      In May of 2014, Mr. Olsen was working on an article involving the

failure of the VA to provide adequate health care for veterans at the same time the

VA was giving its executives large bonuses.  Mr. Olsen accordingly requested from

the VA the amounts of bonuses paid to VA executives from the year 2001 to 2014.

4.      The VA responded, after much back-and-forth, from their "Corporate

Senior Executive Management Office," and stated that their records of bonuses given

to senior executive staff only go back to 2009.  The letter suggests, but does not

directly state, that this is because the Corporate Senior Executive Management

Office, ("CSEMO"), was only created in 2009.

5.     The VA has an obligation to search all its offices for this information,

not just the CSEMO.  The VA did not say the information does not exist, only that

the records do not exist in the CSEMO branch of the VA, because it was created in

2009.

6.     Mr. Olsen filed an administrative appeal of the partial denial of records

with the VA on September 22, 2014.  In his appeal he stated "FOIA does not allow an

agency to deny release of public records simply because said records are archived or

held by a different branch or department of the agency."

5.     On October 21, 2014, the VA acknowledged receipt of his FOIA

appeal, stating "we are unable to offer an estimate as to when your appeal will be

completed."

## JURISDICTION AND VENUE

6.     This Court has jurisdiction over this action pursuant to 5 U.S.C. §

552(a)(4)(B), as well as under 28 U.S.C. § 1331 because this action arises under the

FOIA, the Declaratory Judgment Act, 28 U.S.C. § 2201 *et se*q., and the Equal Access

to Justice Act, 28 U.S.C. § 2412 *et seq*.

7.     Venue is proper in this Court under 5 U.S.C. § 552(a)(4)(B) and 28 U.S.C. § 1391 because the Defendant's Main Office is in this district, and a substantial part of the events or omissions giving rise to the claims herein occurred within this district.

## PARTIES

8.     KEN OLSEN is a freelance journalist who resides in Portland, Oregon. He is a frequent contributor to *The American Legion Magazine* and other publications.

9.     The U.S. DEPARTMENT OF VETERANS AFFAIRS is a Cabinet-level Department of the U.S. Government.  It oversees health care, survivor's benefits, disability compensation and other benefits for U.S. veterans.

## THE FREEDOM OF INFORMATION ACT

10.     The FOIA was enacted "to establish a general philosophy of full agency disclosure unless information is exempted under clearly delineated statutory language."  S. Rep. No. 813, at 3 (1st Sess. 1965).  The Supreme Court has affirmed that "this philosophy, put into practice, would help 'ensure an informed citizenry, vital to the functioning of a democratic society.'"  *Dep't of Justice v. Tax Analysts*, 492 U.S. 136, 142 (1989) (quoting *NLRB v. Robbins Tire & Rubber Co*, 437 U.S. 214, 242 (1978)).  "The basic purpose" of FOIA is "to open agency action to the light

of public scrutiny." *Dep't of Justice v. Reporters Comm. for Freedom of the Press,* 489 U.S. 749, 772 (1989) (quoting *Dep't of the Air Force v. Rose*, 425 U.S. 352, 372 (1976)).

11.     Under the FOIA, a member of the public may request to inspect any agency record.  If the record does not fall under an exemption and if the requester has reasonably described the record, the agency must make the record "promptly available" for inspection. 5 U.S.C. § 552 (a)(3)(A).

12.     Agencies are called upon by the FOIA to "review, manually or by automated means, agency records for the purpose of locating those records which are responsive to a request."  5 U.S.C. § 552 (a)(3)(D).

13.     An agency that receives a FOIA request must "determine within 20 days . . . after the receipt of any such request whether to comply with such request and shall immediately notify the person making such request of such determination . . . and of the right of such person to appeal to the head of the agency any adverse determination."  5 U.S.C. 552 (a)(6)(A)(i).

14.     The agency has twenty working days to resolve an appeal.  5 U.S.C. 552 (a)(6)(A)(ii).

**STATEMENT OF FACTS**

15.     On May 11, 2014, Mr. Olsen requested from Gina Jackson, his usual

contact in the VA, "the total amount of bonuses paid" to VA senior executives from

2001 to 2014, broken down by year.  Attachment 1, page 1.[1]  In his e-mail he stated,

"it's my understanding this sort of routine fiscal information is readily available from

VA's fiscal office and a FOIA is not necessary.  My deadline is this week."  *Id.*

16.     After some back-and-forth, the VA Deputy Director for Media

Relations, Walinda West, responded on May 21, 2014 to Mr. Olsen, to say that his

request would "require extensive and comprehensive research," and that although Ms.

Jackson was "working feverishly" on his request she nonetheless did not "want it to

languish" and thus offered a few short paragraphs about executive bonuses that she

said Mr. Olsen could "state as a fact in the story without attribution."  Attachment 1

at 2, 3.  The information she offered was that "VA must remain competitive to recruit

and retain the best personnel in order to best serve Veterans" and offered the amounts

given in bonuses for 2009 and 2012, but no other years.  *Id.*

17.     Mr. Olsen responded that he needed the amounts for each year from

2001 through 2014.  As the request was now being treated as a FOIA request (with

_____

[1]All materials referred to in this section are attached in an Appendix and cited by
Attachment Number.

typical FOIA time frames), Mr. Olsen asked that he also be given the names of the

people who received the bonuses, for each year.  *Id.* at 4.

18.     On May 29, 2014, Joan Zahn, FOIA Officer for VA's CSEMO, sent an e-mail

to Mr. Olsen requesting his mailing address, which he provided.  *Id.* at 5.

19.  Sometime prior to that point, the VA had assigned Mr. Olsen's FOIA

request a FOIA tracking number, 14-05-270-F.  *Id.* at 4, 5.

20.     On June 5, 2014, Mr. Olsen asked Ms. Zahn if she had an "estimated

time for release of this information."  Ms. Zahn responded, "Should be next week."

*Id.* at 5, 6.

21.     But after a month passed Mr. Olsen still had not received anything on

his request, and on July 8, 2014 he wrote, "Hi Joan – Looks to me like a month has

passed since we last communicated about this request.  Can you please give me an

update on when I can receive this information?"  *Id.* at 6.

22.     Ms. Zahn wrote on July 9 "I am checking sir and will get back to you

today."  *Id.*

23.     But Ms. Zahn did not get back to him that day, or any other day, until

one month later.  On August 7, 2014, Ms. Zahn sent him a letter stating that

"CSEMO stood up on 2009 and our records only date back to such time."  *Id.* at 7 (e-

mail) *and* Attachment 2 (August 7, 2014 letter). Acordingly, Mr. Olsen was only given information on executive bonuses from 2009 forward.

24.     Although Ms. Zahn stated on August 7, 2014 that she had supplied the data for fiscal years 2009, 2010, 2011, 2012, and 2013, some of the materials did not immediately get transmitted owing to an e-mail problem, and after several days of back-and-forth about the missing data, Ms. Zahn stated on August 12, 2014 that the years from 2009 on "is all CSEMO can provide."  *Id.* at 11.

25.     Mr. Olsen asked Ms. Zahn by email, "Where is the pre-FY 2009 data kept within the VA?" but he never received an answer from her or anyone else in the VA.  *Id.* at 12.

26.     Mr. Olsen appealed the VA's determination on September 22, 2014. Attachment 3.  In his appeal he wrote, "I appeal VA's decision not to release information regarding senior executive bonuses paid prior to 2009. . . . FOIA does not allow an agency to deny release of public records simply because said records are archived or held by a different branch or department of the agency.  VA has a clear statutory obligation to conduct a thorough and complete search that can reasonably be expected to produce the information requested."

27.  On October 21, 2014, Mr. Olsen received a letter from the Office of General Counsel for the U.S. Department of Veterans Affairs stating "we are unable to offer an estimate as to when your appeal will be completed."  Attachment 4.

## FIRST CLAIM FOR RELIEF

### FOIA—Failure to Conduct a Proper Search

28.    The VA did not conduct a proper search for the materials.  It is inconceivable that the VA does not maintain records of its senior staff bonuses, which totaled $3.3 million in 2009.

29.    If the information is in some VA office other than the CSEMO, the VA has an obligation to seek the information in that other VA office; it may not limit its search to one office if there are others where the information might be found. *Oglesby v. U.S. Dept. of Army, 920 F.2d 57, 68* (D.C. Cir. 1990) ("[a]gency cannot limit its search to only one record system if there are others that are likely to turn up the information requested.")  The fact that the CSEMO was only created in 2009 does not absolve the VA from looking in other offices of the VA.  The agency is charged by the FOIA to make records "promptly available" to anyone who "reasonably describes such records."  5 U.S.C. 552 (a)(3)(A).

## SECOND CLAIM FOR RELIEF

FOIA—Failure to Determine Appeal

30.     The agency is required to "make a determination with respect to any appeal within twenty days," excepting Saturdays, Sundays, and holidays.

31.     Plaintiff has exhausted its administrative remedies.

### REQUEST FOR RELIEF

WHEREFORE, Plaintiff Ken Olsen requests this Court:

A.      Declare that Defendant's failure to conduct a proper search was unlawful;

B.      Declare that Defendant's failure to make a determination on Plaintiff's appeal within the statutory time frame was unlawful;

C.      Order Defendant to promptly locate and release the documents to the Plaintiff;

D.      Award Plaintiff the reasonable costs, litigation expenses, and attorney's fees incurred in prosecuting this civil action, under FOIA, 5 U.S.C. 552(a)(4)(E), the Equal Access to Justice Act, 28 U.S.C. § 2412(d)(1)(B), and all other applicable authorities;

E.      Grant such other and further relief as the Court deems just and proper.

Dated: December 15, 2014.

Respectfully Submitted this 15 December, 2014.

　　　　　　/s Doug Wolf, Esq.
Doug Wolf, Esq.
888 16th Street, NW, Suite 800
Washington, DC 20006
(202) 650-5505
dougwolf@altostreetenvironmental.com